**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SHIRLEY NOBLE, ET AL.** | § | |
| | § | |
| **v.** | § | **A-07-CA-968 LY** |
| | § | |
| **THE GEO GROUP, INC., ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Transfer Venue ("Motion"), filed on December 20, 2007 (Clerk's Docket No. 5), Plaintiffs' Response to Defendants' Motion to Transfer Venue ("Response"), filed on February 8, 2008 (Clerk's Docket No. 27), Defendants' Reply to Plaintiffs' Response to Motion to Transfer Venue, filed on February 15, 2008 (Clerk's Docket No. 33), Plaintiffs' Sur-Reply to Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Transfer Venue, filed on February 26, 2008 (Clerk's Doc. No. 38), and Plaintiffs' Advisory to the Court, filed on March 3, 2008 (Clerk's Doc. No. 44).

On April 29, 2008, the District Court referred the above-matter to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

This case arises from the suicide of Scot Noble Payne ("Payne"). Payne was sentenced to prison in Idaho, but incarcerated at the Dickens County Correctional Facility ("DCCC") in Spur, Texas. The Plaintiffs are Payne's parents, Shirley Noble and Albert Payne. They are residents of California. Defendants are The GEO Group, Inc. ("GEO"), George Zoley, Wayne H. Calbrese, Michael G. O'Rourke, and John Bulfin. GEO is a Florida corporation that runs correctional institutions (among other things) and the individuals are GEO directors and officers that reside in Florida. GEO operated the DCCC at the time of Payne's death. According to Plaintiffs, Defendants neglected, abused, and subjected Payne to inhumane conditions during his confinement, which eventually led to his suicide. Plaintiffs allege negligence and civil conspiracy claims against Defendants.

## II. PLAINTIFFS' EVIDENTIARY OBJECTIONS

Before addressing the merits of the Motion, the Court must first consider Plaintiff's objections to some of the Defendants' evidence. In support of their Motion, Defendants submitted the affidavit of Randy Tate, GEO's designated representative regarding venue issues. Plaintiffs assert that Mr. Tate's affidavit, as well as his deposition testimony, are unreliable and unsupported. Plaintiffs allege four specific objections regarding Mr. Tate's affidavit and deposition testimony. First, they contend Mr. Tate's affidavit should be disregarded because he was not competent to testify regarding the matters set forth in the affidavit. Second, Plaintiffs argue the affidavit is conclusory. Third, Plaintiffs contend Mr. Tate's affidavit is impermissibly based on unattached documents. Last, Plaintiffs complain that counsel for Defendants terminated Mr. Tate's deposition

after only two hours without good cause. The Court is of the opinion that Plaintiffs' objections should be overruled.

Mr. Tate is competent to testify regarding the matters contained in his affidavit. He is the Assistant Director of Operations for GEO's regional office and served as the interim warden of the DCCC. Affidavit of Randy Tate ("Tate Aff."), attached to Defendants' Motion to Transfer Venue, at ¶ 2. His knowledge is based not only on his review of GEO documents, but also his job responsibilities at GEO. Tate Aff. at ¶ 5. Accordingly, Plaintiffs' first objection is overruled.

Plaintiffs' second objection that the Tate Affidavit is conclusory and third objection that Defendants failed to attach the documents referenced therein must also be overruled. These objections, like Plaintiffs' first, relate to Mr. Tate's testimony concerning twenty-five witnesses who purportedly reside in the Northern District. It is Mr. Tate's testimony regarding these twenty-five witnesses that Plaintiffs specifically seek to strike. *See* Plaintiffs' Response to Defendants' Motion to Transfer Venue at pp. 12-13. The Court need not rely on Mr. Tate's testimony regarding the twenty-five witnesses in reaching its decision to transfer this case. Defendants' Rule 26(a)(1) Disclosures reveal at least as many potential witnesses who reside in the Northern District. *See* Defendants' Rule 26(a)(1) Disclosures, attached as "Exhibit A" to Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Transfer Venue, at pp. 2-8. With respect to Plaintiffs' argument that Mr. Tate failed to attached documents to his affidavit, the cases cited by Plaintiffs are not applicable. They are both summary judgment cases that analyzed affidavits for compliance with Rule 56(e). *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994).

Regarding the fourth and final objection by Plaintiffs, the Court is of the opinion that Plaintiffs have been provided ample opportunity to obtain venue-related discovery. Plaintiffs claim that Defendants engaged in discovery abuse and the Motion should be denied purely as a sanction for such abuse. Plaintiffs failed to cite any legal authority in support of their argument that Defendants' Motion should be denied as a sanction for alleged discovery abuse. In addition, Plaintiffs' discovery concerns with respect to venue issues were already addressed by the Court in the Order filed February 29, 2008. *See* Order dated February 29, 2008 (Clerk's Doc. No. 41). Moreover, Plaintiffs were offered additional time to depose Mr. Tate, the opportunity to conduct a separate Rule 30(b)(6) deposition regarding venue-related topics, and to supplement their Response, but apparently did none of the three. *See* Joint Discovery Conference Report, filed on February 15, 2008 (Clerk's Doc. No. 31), and p. 4; Plaintiffs' Advisory to the Court, filed on March 3, 2008 (Clerk's Doc. No. 44). Defendants made reasonable accommodations concerning discovery in this case. *See* Order, filed February 29, 2008 (Clerk's Doc. No. 41) at p. 4. Therefore, Plaintiffs' fourth objection is overruled and Plaintiffs' request to dismiss the Motion as a sanction for alleged discovery abuse is DENIED.

## II. ANALYSIS

In their Motion, Defendants request the Court transfer this case to the Lubbock Division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). They argue transfer is warranted because the majority of the non-party witnesses reside in the Northern District, the Western District's heavy caseload will delay adjudication, and there is little local interest in this case due to the absence of any significant connection to the Western District. In their Response, Plaintiffs assert evidentiary objections and argue Defendants failed to satisfy their burden to prove the Northern District is clearly

4

more convenient than the Western District. According to Plaintiffs, the Western District is the most appropriate venue because GEO's Texas office is located in New Braunfels, Defendants do a great deal of business in Austin, and the witnesses, key documents, and evidence are all located in the Western District.

### A. Motion to Transfer Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960). The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). In considering a motion to transfer venue pursuant to § 1404(a), the district court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). Furthermore, courts should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P. v. A & H Supply Co.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005). It is well settled that the party seeking the transfer of venue bears the burden of demonstrating that the case should be transferred. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

The convenience determination for purposes of § 1404(a) turns on private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). "[P]rivate concerns include: (1)

the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the costs of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious and inexpensive." *Id*. "[P]ublic concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The plaintiff's choice of forum is an additional consideration. *Fletcher v. S. Pac. Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986).

**B.     Is the Northern District of Texas, Lubbock Division, an Appropriate Venue?**

Section 1404(a) provides that a case may only be transferred to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, as an initial matter, the Court must determine whether the Northern District of Texas is an appropriate venue for this case. Section 1391(a) of Title 28 of the United Stated Code provides:

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). This case might have been brought in the Northern District of Texas, Lubbock Division, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiffs occurred there. *Id.* There is no dispute that Payne was incarcerated at the DCCC during the time leading up to and including his suicide. Plaintiffs' allegations in their Complaint concern

housing conditions, policies and procedures, and corrections officers' actions at the DCCC. The DCCC is located in Spur, Dickens County, Texas, which is in the Lubbock Division of the Northern District of Texas. Therefore, because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Lubbock Division of the Northern District, this case could have been brought there.

**C.     Plaintiff's Choice of Forum**

Generally, a plaintiff's choice of forum is entitled to some deference. However, this consideration is not conclusive or determinative. *See In re Horseshoe Entm't*, 337 F.3d 429, 434-35 (5th Cir. 2003). In addition, the weight to be accorded the plaintiff's choice of forum "is diminished where plaintiff brings suit outside his home forum." *Heppner v. Krause Plow Corp., Inc.*, No. Civ. A. 300CV0083D, 2001 WL 124947 at *2 (N.D. Tex. Feb. 18, 2001). Here, Plaintiffs are not residents of the Western District of Texas. They reside in Los Angeles, California. Moreover, as previously noted, most of the operative facts underlying Plaintiffs' claims occurred in the Northern District where Payne was incarcerated. Because neither Plaintiff resides in the Western District and most of the operative facts made the basis of their Complaint occurred in the Northern District, the Court finds that Plaintiffs' choice of forum is entitled to little deference. *See Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1109 (S.D. Tex. 1997) (finding that a plaintiff's choice of forum was entitled to little or no deference when the plaintiff was not a resident of the forum and there was no significant connection between the case and forum).

**D.     Private Factors**

*1.     Access to Proof*

This factor has become less significant due to advances in copying technology and information storage. *In re Volkswagen of Am.*, 506 F.3d 376, 381 (5th Cir. 2007). In their Motion, Defendants contend the sources of proof, including the documents, physical evidence, and incident site are located in the Northern District. Plaintiffs contend no documents or evidence remain in the Northern District and that important state documents concerning the DCCC are located in Austin. Since Defendants filed their Motion, GEO's documents and the physical evidence related to Payne's suicide have been transferred to GEO's Florida headquarters and/or GEO's attorneys' office in Austin, Texas. *See* Deposition of Randy Tate ("Tate Depo."), attached as "Exhibit 6" to Plaintiffs' Response to Defendants' Motion to Transfer Venue, at pp. 26-28, 60. However, documents retained by law enforcement organizations and healthcare providers, as well as the DCCC facility, are no doubt still located in the Northern District. Accordingly, at the present time documents and physical evidence are located in the Northern District, Western District, and Florida.

"[W]hen documents can be easily copied and shipped . . . the Court does not consider their preset location an important factor in the transfer analysis." *Z-Tel Commc'ns v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 576 (E.D. Tex. 2004). The Court does not see any reason, and the parties have expressed none, why the documents and videotapes identified by the parties cannot be easily duplicated and transferred between them. In fact, the parties already agreed to do so with respect to some of the evidence in this case. *See* Joint Discovery Conference Report, filed on February 15, 2008 (Clerk's Doc. No. 31) at pp. 2-3. In addition, the parties have not indicated that the inspection or testing of the physical evidence, including the razor blade and cotton swabs retained by GEO, will

be any more difficult if this case is transferred. With respect to the sources of proof in this case, Plaintiffs have failed to persuasively claim that they will be inconvenienced by litigating this case in the Northern District. Considering that the documents and videotapes may be duplicated and transferred between the parties, but that the DCCC facility is located in the Northern District, this factor weighs slightly in favor of transfer.

### 2. *Availability and Cost of Attendance of Witnesses*

The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to § 1404(a). *See Continental Airlines, Inc. v. Am. Airlines, Inc.,* 805 F. Supp. 1392, 1396 (S.D. Tex. 1992); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed. 2008). However, this factor does not stand alone and must be weighed against the other relevant factors that typically are considered. *Id.* Courts have found that the "convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Continental Airlines, Inc.*, 805 F. Supp. at 1396.

Defendants argue that the majority of the non-party witnesses are residents of and/or work in the Northern District.[1] Defendants' Rule 26(a)(1). Disclosures identify thirty non-party witnesses that reside in the Northern District. *See* Defendants' Rule 26(a)(1) Disclosures, attached as "Exhibit

---

[1] Both parties have identified current prisoners as potential witnesses. As noted by Defendants, the location and convenience of prisoners is largely irrelevant because the trial court has discretion weather to permit prisoner witnesses to appear for trial. *See Jackson v. Foti*, No. 95-2472 C/W 95-3956 Section "I" (3), 1996 U.S. Dist. LEXIS 8169, at *8 (E.D. La. June 7, 1996). The parties have also identified residents of Idaho as potential witnesses. The Idaho residents are outside the subpoena power of both the Western District and Northern District. The Court notes that traveling between Lubbock and Boise, Idaho is not materially more burdensome than traveling between Boise and Austin.

A" to Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Transfer Venue. These individuals include corrections officers, law enforcement officers, and medical personnel. It appears that only two of the non-party witnesses identified by Defendants reside in the Western District, and there is no indication by either party that they are of any particular importance to the present case. *See id.* On the other hand, Plaintiffs contend eighteen witnesses reside in the Western District. They include eight GEO corporate employees, six lobbyists, and four state officials. Of the eight GEO corporate employees, half are named parties. However, it is the convenience of the non-party witnesses as opposed to the party witnesses that is most important. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). In addition, only three of the eight actually live in the Western District. The remainder reside in Florida. With respect to the lobbyists and state officials identified as residing in the Western District, the Court is doubtful that they are key witnesses because this is a wrongful death tort case.[2] While both parties should have provided more detail concerning the specific testimony they expect to obtain from witnesses, the identification of witnesses and their relation to this case by the parties, combined with the factual allegations in Plaintiffs' Complaint, reveal that the majority of the important non-party witnesses reside in the Northern District. The events made the basis of Plaintiffs' claims occurred in the Northern District, and the key non-party witnesses are those who worked at the DCCC before, during, and after Payne's death. For example, as noted by Defendants, the individuals who actually worked at the DCCC will be essential regarding the causation element of Plaintiffs' claims. The location of the majority of

---

[2]As the Court noted in an earlier order dealing with venue discovery, documents regarding lobbying activities or public officials appeared to have nothing to do with this case. *See* Order dated February 29, 2008 (Clerk's Doc. No. 41) at 7. With regard to the transfer motions, Plaintiff once again raises these issues without explaining how they are relevant to this wrongful death case.

the important witnesses outweighs the convenience of a few marginally relevant witnesses. Accordingly, this factor weighs in favor of transfer.

### 3.     *Practical Considerations Concerning the Speed and Expense of Trial*

This factor relates to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). In addition to the other factors discussed herein, Plaintiffs make several arguments related to the location and resources of the parties and their counsel. First, Plaintiffs contend their counsel does not operate an office in Lubbock and that the transfer of this case to the Northern District will result in an additional financial burden for their counsel. Unfortunately for Plaintiffs, the location of counsel is "irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d at 434; *see also Scheble v. Davenport*, No. 2007 WL 1893364, at *4 (N.D. Tex. June 29, 2007) (court refused to consider costs associated with location of counsel). Second, Plaintiffs argue Austin is more convenient because Defendants' Texas headquarters is in New Braunfels, which is in the Western District. The mere fact that GEO has an office in New Braunfels does not mean Austin is a more convenient venue for Defendants and does not outweigh the other factors discussed herein. GEO's main headquarters is in Miami, Florida. Tate Depo. at p. 32. Last, Plaintiffs argue that the location of the DCCC is of little relevance. The location of the alleged wrong is an important factor that weighs in favor of transfer. *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F. Supp. 2d 578, 593 (E.D. Tex. 2006); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005). This is a wrongful death case. The events giving rise to Plaintiffs' claims virtually all took place at the DCCC in Spur, Texas. Plaintiffs have not provided evidence of any potentially liability-creating events which occurred in the Western District. Based

on the absence of any significant connection between the underlying dispute and the Western District, the Court is not inclined to retain this case.

**E.     Public Interest Factors**

*1.     Administrative Difficulties Flowing from Court Congestion*

Defendants contend the Western District has one of the heaviest caseloads in the country and more pending cases than the Northern District does. In response, Plaintiffs point out that Defendants failed to take into account the greater number of judges in the Western District and the fact that there are more civil cases pending in the Northern District. Neither party has submitted any evidence that the litigation of this case would present or be hindered by any administrative difficulties. While both courts maintain full dockets, there is no indication that litigating this case in either district will unduly delay the resolution of this case. Accordingly, this factor does not weigh for or against transfer.

*2.     Local Interest*

The Northern District has a far more direct interest in adjudicating this case than the Western District. The majority of the actions upon which Plaintiffs' claims are based took place at the DCCC in Spur, Texas. Payne was incarcerated and committed suicide there. None of the events described in Plaintiffs' Complaint occurred in or near Austin, Texas. Clearly, the citizens of the Northern District have a stronger interest in correcting alleged wrongs that took place in their community. *Lindloff v. Schenectady Int'l*, 950 F. Supp. 183, 186 (E.D. Tex. 1996). It would be unfair to burden Austin Division residents with jury duty in a case with which their community has no relation. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). Consequently, this factor also favors transfer to the Northern District of Texas.

*3.     Other Public Interest Factors*

The parties do not contend that the remaining public interest factors (familiarity with governing law and avoidance of conflicts of law) impact the venue analysis here. This Court and the Lubbock Division are both well-equipped to apply the applicable law. No conflict of law issues exist in this case. Accordingly, these factors are inapplicable or neutral, and do not weigh for or against transfer.

### III.  CONCLUSION

After carefully considering the foregoing factors, the entire case file including the parties' briefing, and the relevant caselaw, the Court finds that Plaintiffs' evidentiary objections should be overruled and that the Defendants have sustained their burden. The interests of justice and convenience of the parties and witnesses dictate that this case be transferred to the Northern District of Texas, Lubbock Division. Accordingly, the Court recommends that the District Court OVERRULE Plaintiffs' evidentiary objections and GRANT Defendants' Motion to Transfer Venue.

### IV.  RECOMMENDATION

The undersigned Magistrate Court RECOMMENDS that the District Court OVERRULE Plaintiff's evidentiary objections, GRANT Defendants' Motion to Transfer Venue (Clerk's Doc. No. 5), and TRANSFER this lawsuit to the Northern District of Texas, Lubbock Division, pursuant to 28 U.S.C. § 1404(a).

### V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 27th day of June, 2008.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE